**Opinion issued August 12, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00860-CV

_____

**SEAPRINTS, INC., HERMAN H. KOSTER,
AND ELISABETH KOSTER, Appellants**

**V.**

**CADLEWAY PROPERTIES, INC., Appellee**

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2012-72404**

---

## O P I N I O N

Appellants Seaprints, Inc., Herman H. Koster, and Elisabeth Koster filed a

bill of review, seeking to vacate a 2007 default judgment entered against them in

favor of appellee Cadleway Properties, Inc. The appellants claimed that they were

never served with process and had no notice of the action in which the default

judgment was rendered. Both sides of the dispute moved for traditional summary judgment, which the trial court entered in favor of Cadleway. However, because the appellants presented evidence corroborating their sworn denials of service, we reverse and remand the case for further proceedings consistent with this opinion.

## Background

Seaprints, Inc., a corporation owned by Herman and Elisabeth Koster, secured a loan from the Small Business Administration in 1995. The Kosters both personally guaranteed the loan. Later, Cadleway Properties, Inc. acquired the note. When Seaprints stopped making payments, Cadleway sued Seaprints and the Kosters to enforce the note and personal guaranties.

The parties dispute whether Seaprints and the Kosters were served with process. Curtis Wheeler, a licensed process server, executed affidavits of service for all defendants, stating that he personally delivered the citations at specified residential addresses to the Kosters in Seabrook, Texas, and to the registered agent of Seaprints, Mark Salbert, in League City, Texas.

At the time Wheeler claimed to have accomplished service of process, Elisabeth and Herman were separated and living apart from each other. Though the couple did not divorce until later, at the time Herman was no longer living at the marital home in Seabrook, and he had moved into an apartment in Kemah, Texas. Salbert claimed that he was not at his League City residence at the time he was

allegedly served. In his affidavit, he declared that he had been at a pawn shop buying a carpet shampooer.

No party ever filed an answer to Cadleway's petition. On April 19, 2007, the trial court signed a default judgment awarding $11,295 and post-judgment interest to Cadleway. This document decreed that Cadleway "have and recover" judgment "from Defendant, Richard D. Cardenas"—a stranger to the lawsuit—and it did not specify a recovery from any defendant named in the suit. Recognizing the error months later, Cadleway filed a motion for judgment nunc pro tunc. On January 14, 2008, the trial court entered an "Order for Judgment Nunc Pro Tunc" and a new judgment substituting the three defendants' names for "Richard D. Cardenas." In their bill of review, Seaprints and the Kosters avowed that they had no contemporaneous knowledge of the judgment or these trial court proceedings.

Cadleway eventually sold the judgment to National Judgment Recovery Center, L.P., which in turn obtained a writ of execution. On the basis of this writ, in September 2012 a commercial building owned by the Kosters and located in Brazoria County was seized and sold at auction by the local sheriff. The purchaser at the sheriff's sale was SOCA Funding, LLC. Though they had been divorced for several years by this time, the Kosters had continued to jointly own the Brazoria County property, and they had borrowed money from a bank using the property as

collateral. In addition to the interest it acquired at the sheriff's sale, SOCA also purchased the note and deed of trust the Kosters had given to the bank.

The Kosters sued SOCA in Brazoria County, seeking to set aside the sheriff's sale. They had long leased the Brazoria County building to a commercial tenant. In their affidavits, they claimed that they first heard of the judgment against them when their tenant informed them of the sheriff's sale. They successfully obtained a temporary injunction requiring SOCA to conserve the rents it received and forbidding it from foreclosing.

In addition to the Brazoria County action, Seaprints and the Kosters filed a bill of review in Harris County, in the same trial court that had entered the default judgment against them. Naming Cadleway as defendant, they alleged that a bill of review was proper as they never had received notice of the prior suit and they never had been served with process. They further argued that the judgment nunc pro tunc, substituting their names for "Richard D. Cardenas," was improperly entered after the expiration of the trial court's plenary power. They moved for traditional summary judgment arguing that the default judgment against them was thus void because it was made at a time when the trial court lacked jurisdiction.

Cadleway also moved for traditional summary judgment. It argued that Seaprints and the Kosters, in the face of affidavits of service executed by a licensed

4

process server, failed to meet an enhanced burden of proof to demonstrate that they had not been served. Cadleway attached evidence to its motion, including:

- Wheeler's affidavits of service for Seaprints and each of the Kosters;

- a transcript of the Kosters' testimony in the Brazoria County proceeding;

- a sworn "Designation and Disclaimer of Homestead" executed by the Kosters in 2008, in which they both identified the house in Seabrook as their homestead and the residence they had occupied since 1991;

- franchise tax forms obtained from the Texas Secretary of State identifying the Kosters as officers of Seaprints and listing an address for both at the Seabrook house;

- another affidavit from Wheeler in which he affirmed that he served the Kosters and Salbert (as registered agent for Seaprints), that he remembered having served them, that he remembered the location of their residences, and that he recognized the Kosters' faces from their photographs;

- an affidavit from an employee of the Harris County District Clerk who attested that notice of the entry of the default judgment was automatically mailed to Seaprints and the Kosters at their last known address, which was the Seabrook house; and

- a certified copy of an abstract of judgment, reflecting a default judgment against Seaprints and the Kosters, filed in Harris County in June 2007.

The appellants filed a response to Cadleway's motion for summary judgment to which they attached evidence, including:

- affidavits of the Kosters and Salbert, denying that they were served with process or had notice of the action and default judgment until they learned of the sheriff's sale;

- a copy of the 2009 decree of divorce dissolving the Kosters' marriage;

- documents reflecting Herman's home address in Kemah, including his Texas driver's license;

- a copy of a receipt from EZPAWN in Webster, Texas, indicating that Salbert purchased a carpet shampooer less than half an hour before the time indicated on Wheeler's corresponding affidavit of service;

- the affidavit of Diane Gillebaard affirming that the Kosters separated in 2006 and that Herman moved to an apartment that Gillebaard owned in Kemah; and

- the affidavit of Kaye Sykes, a neighbor, affirming that the Kosters separated in 2006, that Herman moved to Kemah and "did not return after that to live with Elisabeth," and that she "did not see Herman Koster around" the Seabrook house or the surrounding yacht club "at any time after he moved out in January of 2006."

Cadleway filed a reply to this response, in which it lodged numerous objections to the supporting evidence. For example, it objected that the receipt for the carpet shampooer was hearsay and that many statements in the affidavits were conclusory or speculative. Apart from these objections, Cadleway attached new evidence to its reply, including several deposition excerpts and a Lakewood Yacht Club activity log from the club's guard booth indicating that a process server passed through to visit "Koster, Elisabeth & Herman" on the night that Wheeler claims to have served them.

Ultimately, the trial court entered summary judgment in favor of Cadleway. It did not rule on Cadleway's evidentiary objections. Seaprints and the Kosters filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**Analysis**

The appellants argue that the trial court erred both in granting Cadleway's motion for summary judgment and in denying their own motion for summary judgment. With respect to Cadleway's motion, they argue that they were entitled to proceed with their bill of review because they offered evidence corroborating their denials that they had been served with process. In regard to their own motion for summary judgment, they argue that the evidence conclusively established that the judgment nunc pro tunc replacing their names for "Richard D. Cardenas" was entered at a time after the trial court's plenary power had expired, that it corrected a judicial error rather than a clerical error, and that it was accordingly void.

## I.    Cadleway's motion for summary judgment

Traditional summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment is required either to conclusively negate at least one essential element of the plaintiff's cause of action or to conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). To determine whether there is a disputed material fact, we consider evidence favorable to the nonmovant as true

and draw every reasonable inference in its favor, resolving all doubts on the side of the nonmovant. *Nixon*, 690 S.W.2d at 548–49.

"A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal." *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). Ordinarily, bill-of-review plaintiffs must plead and prove "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part." *Id.*

In this case, the appellants assert that they were never served with process. Bill-of-review plaintiffs who claim they were not served need not present a meritorious defense or evidence of fraud, accident, or mistake. *Id.* at 96–97. Furthermore, plaintiffs who prove non-service thereby conclusively establish their lack of fault or negligence. *Id.* at 97. Thus, proof of non-service conclusively establishes the "only element that bill of review plaintiffs are required to prove when they are asserting lack of service of process as their only defense." *Id.*

The bill-of-review plaintiff bears the burden of proving that he was not served with process. *Id.* Because a bill of review constitutes a direct attack on a judgment, no presumption applies in favor of the valid issuance, service, or return of the citation. *Min v. Avila*, 991 S.W.2d 495, 499 (Tex. App.—Houston [1st Dist.]

1999, no pet.). A "bill-of-review petitioner may therefore demonstrate that the judgment is invalid for lack of proper service of process, whether or not the face of the record discloses the invalidity and despite recitals of proper service in the judgment under attack." *Id.* at 499–500.

Nonetheless, a plaintiff's bare denial that he was served is inadequate to carry his burden in the face of a valid return of service. *Id.* at 501. In order to overcome a prima facie showing of service of process established by the recitals in the officer's return, the plaintiff must come forward with "evidence of supporting facts and circumstances" to corroborate his denial. *Id.* This evidence may be circumstantial and need not consist of the testimony of other witnesses. *See id.* at 501, 503. Indeed, the court in *Min v. Avila*, 991 S.W.2d 495 (Tex. App.—Houston [1st Dist.] 1999, no pet.), observed that the plaintiff's own testimony may serve as corroborating evidence in this regard: "The prohibition against considering the challenger's evidence applies only if the evidence does not rise above mere denial of service, or mere denial of service buttressed only by the serving officer's inability to remember serving that particular party." *Id.* at 503. Whatever the source of the evidence, the definitive test "is whether it demonstrates independent facts and circumstances that support, and thus corroborate, the challenger's claim." *Id.* For example, the bill-of-review plaintiff in *Min* corroborated his denial of service with his own testimony that he had moved away from the apartment where

he purportedly was served, that he had discontinued electrical service there, and that another family was living there at the time of the purported service. *Id.*

Cadleway argues that a bill-of-review plaintiff must not only corroborate his denial of service, but that his evidence of non-service must satisfy an enhanced burden of proof "beyond preponderance of the evidence." To support its position, Cadleway relies upon statements from several older cases. For example, in *Cortimiglia v. Miller*, 326 S.W.2d 278 (Tex. Civ. App.—Houston [1st Dist.] 1959, no writ), the court wrote:

> The law is well settled that the return of service either by a sheriff or any other officer authorized by law to make it, is prima facie evidence of the material facts recited therein and a court of equity should not set aside a judgment rendered thereon except upon clear, satisfactory and convincing proof of lack of service of process by the officer who made it.

326 S.W.2d at 282. Other cases referenced by Cadleway contain similar language. *See Sgitcovich v. Oldfield*, 220 S.W.2d 724 (Tex. Civ. App.—Galveston 1949, writ ref'd); *Johnson v. Cole*, 138 S.W.2d 910 (Tex. Civ. App.—Austin 1940, writ ref'd); *Crawford v. Gibson*, 203 S.W. 375 (Tex. Civ. App.—Dallas 1918, writ ref'd). All of these cases have an antecedent in *Randall v. Collins*, 58 Tex. 231 (1881).

We disagree with Cadleway's characterization of the burden of proof. As subsequent cases attest, the burden of proof for a bill-of-review plaintiff is preponderance of the evidence. *Caldwell*, 154 S.W.3d at 98 ("At trial, he must

establish by a preponderance of the evidence that he was never served."); *Ward v. Nava*, 488 S.W.2d 736, 738 (Tex. 1972) ("As in any other fact issue, the burden was . . . to establish his case by a preponderance of the evidence."); *Perez v. Old W. Capital Co.*, 411 S.W.3d 66, 72 (Tex. App.—El Paso 2013, no pet.) ("The party asserting lack of service must corroborate it with 'evidence of supporting facts and circumstances' by a preponderance of evidence."). Past pronouncements to the contrary have been abrogated by these decisions of more recent vintage.

Seaprints and the Kosters argue that they submitted corroborating evidence of their denials of service and that therefore summary judgment against them was improper. We review the record concerning each appellant individually to determine whether Salbert, Herman, and Elisabeth corroborated the denial of service with evidence of supporting facts and circumstances.

### A.    Service on the agent of Seaprints

Salbert, who was purportedly served as registered agent of Seaprints, executed an affidavit denying that he had been served with process. He further denied having had any awareness of the lawsuit until he was informed by the Kosters of their efforts to set aside the sheriff's sale. Significantly, Salbert did not merely deny that he had been served, but he averred that on the morning at issue he had not been at his home in League City, but he was instead in the nearby town of Webster, buying a carpet shampooer. Salbert thus furnished testimony of an

independent fact or circumstance—his presence at a pawnshop in another town—and he did not merely deny that he had been served. *See Min*, 991 S.W.2d at 503. Moreover, the appellants presented a receipt indicating that Salbert purchased a carpet shampooer at 11:16 AM, seventeen minutes before the time listed on the affidavit of service. *See Sanders v. Harder*, 148 Tex. 593, 597, 227 S.W.2d 206, 209 (1950) ("[I]t is not required that the corroborating evidence be direct. It may be wholly circumstantial.").

Cadleway argues that the receipt was hearsay. Although Cadleway objected to this evidence in the trial court, it did not obtain a ruling on its objection. "Failure to secure the trial court's ruling on the objections to the summary judgment evidence also waives the complaint for appeal." *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The trial court's order granting summary judgment in Cadleway's favor does not function as an implicit ruling sustaining the objection. *See Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.). While defects of substance in summary judgment evidence may be raised for the first time on appeal, hearsay is considered an objection as to form. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam) (failure to object to defects in form resulted in waiver); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (defect of

substance may be raised for the first time on appeal but hearsay is defect of form, not substance). As such, Cadleway waived its objection, and the receipt remains part of the summary-judgment evidence we consider.

In light of Salbert's sworn statement that he was at another location on the morning when he purportedly was served and his presentation of the receipt, which corroborates his account, we conclude that Seaprints presented evidence of independent facts and circumstances to corroborate its denial of service.

## B.    Service on Herman Koster

Herman also executed an affidavit denying that he was served with process. In it, he averred that on the date he was purportedly served, February 6, 2007, he was living in Kemah and had separated from Elisabeth. He denied being at his former home in Seabrook at any time that day. He disavowed having had any knowledge of the lawsuit until he heard about the sheriff's sale. In addition to Herman's affidavit, the appellants offered copies of his car registration (dated July 30, 2007), bills (dated October 30, 2006 and May 9, 2007), and his driver's license (expiration date, August 27, 2008), all showing his Kemah address. Furthermore, appellants presented the affidavit of Kay Sykes, a former neighbor of the Kosters in Seabrook, who averred, "Herman Koster moved to Kemah, Texas at the beginning of 2006 and did not return after that to live with Elisabeth." Diane Gillebaard, in her affidavit, claimed Herman moved in January 2006 to an

apartment that she and her husband owned in Kemah and that he resided there until they sold the property in 2008.

Like the successful bill-of-review plaintiff in *Min*, Herman corroborated his denial of service by affirming that he had changed his residence over a year before the date he was supposedly served at his former home. *See Min*, 991 S.W.2d at 503. He further stated that he and Elisabeth were separated at that time, "an independent fact or circumstance" consistent with his absence from the marital home. He also specifically denied being at the Seabrook residence at any time on the day when he was supposedly served. Aside from Herman's testimony, appellants offered circumstantial evidence, in the form of the various documents bearing his Kemah address, to support Herman's claim that he had changed residences. The affidavits of Sykes and Gillebaard are evidence that Herman was living in Kemah as he claims, and thus further circumstantial evidence that he was not present in Seabrook on the night he was supposed to have been served. Although Cadleway claims that the affidavits of Sykes and Gillebaard are "riddled with factual conclusions," this objection is inadequate as it fails to identify specific objectionable portions of the affidavits or to explain why any particular passages should be disregarded as conclusory. *See Walston v. Anglo-Dutch Petroleum (Tenge) L.L.C.*, No. 14–07–00959–CV, 2009 WL 2176320, at *8 n.8 (Tex. App.— Houston [14th Dist.] July 23, 2009, no pet.) (mem. op.) (dismissing objections to

14

affidavits when they were not supported by legal authority and failed to identify specific statements challenged within paragraphs); *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (refusing to consider objections to affidavits—that they were conclusory and not based on personal knowledge—when objections were not sufficiently specific).

Given Herman's denial that he was present at the Seabrook residence at any time on the day in question, his affirmation that he was living somewhere else due to his separation from his wife, and the several documents and collateral affidavits attesting to his change of residence, we conclude that he presented evidence of independent facts and circumstances to corroborate his denial of service.

## C. Service on Elisabeth Koster

Elisabeth also made an affidavit denying that she was served with process. However, she did not deny being present at the Seabrook residence, and in her deposition, she admitted that "as far as [she] knew," she was home in Seabrook on the night she was purportedly served. Like Herman and Salbert, she denied having had any knowledge of the proceedings against her until she learned of the sheriff's sale.

Elisabeth averred that she was the president of Seaprints and that Salbert, its registered agent, had never notified her that the company had been served with process or had a judgment entered against it. Referring to herself and Herman, she

15

further stated, "We could not possibly have both been served at my home address on that date because Herman Koster was not there on that date. We had separated and he moved to Kemah, Texas, in January of 2006."

Elisabeth also stated, "In August of 2008, Herman Koster and I refinanced the commercial property we owned in Pearland, Brazoria County, Texas with Amegy Bank. At that time, neither we nor the bank making the loan had any knowledge of the judgment made the subject of this case." She continued, "In my opinion the property was worth at least $950,000 in 2012, and the outstanding mortgage against the property was less than $400,000. Had I known of any judgment against me which endangered my ownership in the property, I certainly would have taken action to protect my property."

Unlike the other two individuals purportedly served by Wheeler, Elisabeth did not claim to have been somewhere other than the address on the return of service at the time of the purported service. On the contrary, she acknowledged having been at her home. Nonetheless, the summary-judgment evidence, taken as a whole, adequately corroborated Elisabeth's denial of service. Importantly, the affidavits of service claimed that both of the Kosters were served at the Seabrook residence at the same time. As both Kosters averred in their affidavits, Herman was not living at the Seabrook residence at that time and was not present on that night. The evidence suggesting that the affidavit of service was false as to Herman

16

therefore tends to suggest that the affidavit of service was false as to Elisabeth as well. Similarly, if taken as true, Salbert's denial that he was served and the corroborating evidence that he was somewhere else that morning impeach Wheeler's credibility and that of the affidavit he executed claiming to have served Elisabeth.

Testimony in *Ward v. Nava*, 488 S.W.2d 736 (Tex. 1972), that the Supreme Court of Texas found corroborative illustrates the scope of circumstantial evidence upon which a bill-of-review plaintiff may rely:

> Ward stated in this affidavit that he was not served in person; that on Friday, November 19, 1971, someone, whose name he did not remember, called and asked about the lawsuit. Ward did not elaborate as to the identity of the party calling nor did he state for what reason the party calling might have an interest in the case. As a result of the call, Ward began looking for the papers that were supposed to have been served on him. He found the petition in his house as a result of his search on Sunday, November 21, and presumed that it had originally been left in his mailbox. He forgot to take the papers the next day, but delivered them to his insurance agent the following day, November 23, 1971. By this time the default judgment had been entered.
>
> The actions of Ward in searching for the papers and in promptly taking the papers to the insurance agent on their discovery constitute some corroborating evidence of Ward's contention that he had not been served.

488 S.W.2d at 737. Though this evidence was indirect, the court nonetheless found it sufficient to corroborate denial of service.

Elisabeth's testimony about the value of the Brazoria County property and the Kosters' successful use of it as collateral is further circumstantial evidence corroborating her denial of service. In *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206 (1950), the Supreme Court of Texas found the following facts to be corroborative of the bill-of-review plaintiff's denial of service:

> An examination of the record has convinced us that there are corroborating circumstances in this case. Jim Sanders bought this property in 1925 and moved upon it in 1926. He married Jessie Sanders in 1933, and the property has been occupied by them as a homestead since that date. It would be most unnatural for a husband and wife to ignore a suit which would take their homestead from them. After the default judgment was rendered in 1941 their possession was not disturbed until a writ of scire facias was served upon them in this case approximately seven years later. That unusual delay unexplained lends some support to petitioners' testimony. Jim Sanders testified that he made improvements on the property after 1941. . . . Other circumstances are relied upon by petitioners, but we think that those mentioned, while not as strong as might be desired, do constitute some competent evidence corroborating the testimony of the petitioners.

148 Tex. at 597–98, 227 S.W.2d at 209. Although the default judgment obtained by Cadleway did not concern title to the property ultimately seized in satisfaction of the judgment, which real estate was not appellants' homestead, the evidence that a bank was willing to lend the Kosters money secured by property subject to execution under an unsatisfied judgment, and the fact that the two stood to lose a building with a value of $900,000 by not paying a default judgment of $11,295, is evidence that they lacked an awareness of the judgment against them. As in

18

*Sanders*, there was a delay of many years between entry of the judgment and an attempt to enforce it by seizure of the plaintiff's property. To echo the Supreme Court, it would be most unnatural for two people to ignore a judgment that could take such a valuable property from them.

In both *Ward* and *Sanders*, the Supreme Court allowed corroborating evidence to take the form of the parties' testimony about their own behavior, including their own inaction, if that behavior could be seen as inconsistent with service and awareness of the proceedings against them. *See Ward*, 488 S.W.2d at 737; *Sanders*, 148 Tex. at 597–98, 227 S.W.2d at 209. Elisabeth's statements in her affidavit about the value of the property and its use as collateral are likewise testimony as to behavior that could be regarded as inconsistent with service.

Considering the evidence corroborating the other denials of service, the fact that Herman and Elisabeth were purportedly served at the same time and place, and the evidence presented of behavior inconsistent with awareness of the judgment, we conclude that Elisabeth corroborated her denial with supporting evidence of independent acts and circumstances.

In its motion for summary judgment, Cadleway did not contend that the evidence it presented that the appellants were served, such as Wheeler's new affidavit and the records from the security booth, conclusively established service. Rather, it argued that the appellants had offered nothing more than bare denials of

service, which denials were inadequate to the altered standard of proof required to controvert affidavits of service. Since each of the appellants produced evidence corroborating the denial of service, evidence that created a genuine issue of material fact on the subject of service under the corroboration requirement for a bill of review, the trial court should not have granted summary judgment for Cadleway. We sustain the appellants' first issue.

## II.    Seaprints and Kosters' motion for summary judgment

In their second issue, the appellants argue that the trial court should have granted their motion for summary judgment because the judgment nunc pro tunc against them was entered after the trial court's plenary power had expired, it was correcting a judicial error, and it was therefore void. Crucially, however, the appellants do not argue in their brief, and they did not argue in their motion for summary judgment, that they conclusively established the elements of a bill of review. Whether a plaintiff is entitled to employ a bill of review is a necessary predicate that must be established if the validity of the judgment attacked is to be ruled upon. *See Caldwell*, 154 S.W.3d at 97–98 (clarifying procedures to be used when a plaintiff files a bill of review); *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979) (same). Therefore, regardless of the merits of the argument that the judgment was inappropriately amended nunc pro tunc to correct a judicial error, it would be precipitate for a court to enter summary judgment in their favor when

they still have not established the elements of a bill of review. Appellants' second issue is overruled.

## Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.


Michael Massengale
Justice

Panel consists of Chief Justice Radack, Justice Massengale, and Justice Huddle.