**Opinion issued July 21, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00191-CV

————————————

## YIGAL BOSCH, Appellant

## V.

## FROST NATIONAL BANK, Appellee

———————————————————————————————————————

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Case No. 2009-63337

———————————————————————————————————————

## MEMORANDUM OPINION

This is the second appeal arising from a dispute between Frost Bank and Yigal Bosch regarding several defaulted business loans. We dismissed Bosch's first appeal because there was no final judgment in the case at that time. *Bosch v. Frost Nat'l Bank*, No. 01-13-00190-CV, 2013 WL 1932138 (Tex. App.—Houston

[1st Dist.] May 9, 2013, no pet.) (mem. op.). The trial court has since issued a final judgment against Bosch. In nine issues, Bosch contends that he is entitled to a new trial. We affirm in part and reverse in part.

## Background

Bosch, along with five entities he owned or controlled, borrowed money from Frost but later defaulted. Frost foreclosed on the loans. Bosch and the entities brought this lawsuit asserting misconduct by Frost related to its marketing practices and loan servicing.

Four of the entities filed for bankruptcy in the Southern District of Texas. Frost removed this lawsuit to federal bankruptcy court. That court remanded some of Bosch's individual claims against Frost back to the state court while the entities' claims against Frost remained in federal court. The bankruptcy closed shortly thereafter.

Bosch then filed his fourth amended petition, which (1) dropped the entities as plaintiffs, (2) alleged that the entities had assigned their claims to him, and (3) asserted the assigned claims in addition to his claims for personal damages. Frost moved to strike the allegedly assigned claims, and the trial court granted Frost's motion. Frost subsequently filed a counterclaim seeking a deficiency judgment against Bosch. It also sought summary judgment on all of Bosch's claims. Bosch filed a motion to dismiss Frost's counterclaim, contending that the

2

debt was discharged through bankruptcy. The trial court granted Frost's summary-judgment motion and denied Bosch's motion to dismiss Frost's counterclaim.

Bosch requested a jury trial. The trial court denied this request, and Frost tried its counterclaim to the bench. The trial court awarded Frost a deficiency judgment, plus interest and attorney's fees. Bosch timely appealed.

**Standing to Assert the Entities' Claims**

In his first issue, Bosch contends that he has standing to assert the entities' claims because the entities assigned them to him. Frost's motion to strike, which the trial court granted, challenged Bosch's standing on two grounds: (1) the bankruptcy court's remand order deprived Bosch of standing and (2) Bosch was engaged in the unlicensed practice of law. Bosch contends that the trial court erred by granting Frost's motion.

**A.     Construing the motion as plea to the jurisdiction**

Frost titled its motion as a "motion to strike." "We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); *see* TEX. R. CIV. P. 71. The motion challenges Bosch's standing. Standing is a component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993). Subject-matter jurisdiction may be challenged by a plea to the

3

jurisdiction in a motion to dismiss. *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 628 (Tex. 2008); *Brown v. Todd*, 53 S.W.3d 297, 300 n.1, 305 n.3 (Tex. 2001); *Lacy v. Bassett*, 132 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Accordingly, we construe Frost's motion as a plea to the jurisdiction.

**B.      Standard of review**

Frost's motion asserted that Bosch has no standing to bring the entities' claims. Standing "focuses on the question of who may bring an action." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). "Courts lack subject-matter jurisdiction to adjudicate disputes initiated by parties lacking standing." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Pineda v. City of Houston*, 175 S.W.3d 276, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary

4

to resolve the jurisdictional issues raised." *Blue*, 34 S.W.3d at 555. "The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction." *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 308 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446). Once the plaintiff meets this burden, the movant has "the burden to assert that the trial court lacks subject matter jurisdiction and must support that contention with evidence." *Santi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.). "If it does so, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction." *Id.* "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228.

## C.     Assignment of the entities' claims

This lawsuit was originally filed by Bosch and five entities controlled or owned by Bosch. Four of the entities were in bankruptcy; Frost removed this case to federal bankruptcy court. That court remanded some claims between Bosch and Frost to state court. However, it concluded that "the majority of the claims are owned by various entities that are bankruptcy debtors. As such those claims may not be asserted by Mr. Bosch but may be asserted by the various bankruptcy estates." The bankruptcy has now closed but the entities are no longer parties to

this lawsuit. Frost contended that the bankruptcy court's remand order precludes Bosch from bringing the claims. We disagree.

The remand order does not control this case because the bankruptcy closed before Frost filed its motion. When the bankruptcy closes, the bankruptcy court loses its "related to" jurisdiction. *Graber v. Fuqua*, 279 S.W.3d 608, 628 (Tex. 2009).

Moreover, Bosch contends that the entities validly assigned their claims to him after the remand order, which was dated February 3, 2011, issued. He produced evidence that three bankrupt entities assigned their claims to a fourth, 2646 South Loop West Limited Partnership ("2464"). He also adduced evidence that 2464 subsequently transferred all of its "equity and debts, shares, agreements, assignments, amendments, obligations, claims, litigations, promises . . . to Yigal Bosch" on July 29, 2011—the same day the bankruptcy closed.

Frost contends that 2464 did not have the authority to assign the entities' claims due to the bankruptcy reorganization plan for 2464. The plan states:

> All causes of action held by the 2464 Bankruptcy Estate shall be retained for prosecution by either the Debtor or the trustee. These claims include all claims . . . on any theory of recovery against Frost Bank, including lender liability, breach of contract, violation of the DTPA, and/or any other legal grounds. . . ."

The plan does not expressly limit the assignability of the entities' claims. Instead, it allows 2464 to handle the claims as it will. Thus, we reject Frost's

contention that the reorganization plan bars 2464's assignment of its claims to Bosch.

Frost further contends that, by bringing the entities' claims, Bosch has engaged in the unauthorized practice of law. We disagree. Bosch has not claimed to be acting as the entities' attorney; rather he is bringing claims that have been personally assigned to him. It is well-settled that the assignee steps into the shoes of the assignor and may assert the same rights as the assignor. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000). Accordingly, Bosch has not engaged in the unauthorized practice of law because he is not attempting to represent the entities; he is representing himself pro se.

Construing Bosch's pleadings liberally and indulging every reasonable inference in Bosch's favor, we conclude that Bosch has pleaded facts affirmatively demonstrating jurisdiction and has responded to Frost's motion to dismiss with sufficient evidence to raise a fact issue regarding jurisdiction. *See Miranda*, 133 S.W.3d at 226–28; *Santi*, 312 S.W.3d at 804. Accordingly, we sustain Bosch's first issue.

## No-Evidence Summary Judgment

In his second issue, Bosch challenges the trial court's no-evidence summary judgment on the claims originally belonging to him.

7

## A.    Standard of review

We review a summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If a trial court grants summary judgment without specifying the grounds for doing so, as is the case here, we must uphold the trial court's judgment if any ground relied on by the movant is meritorious. *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.— Houston [1st Dist.] 2011, pet. denied).

In reviewing a no-evidence summary judgment, we determine whether the non-movant produced more than a scintilla of probative evidence to raise a genuine issue of material fact for each challenged element. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). More than a scintilla of evidence exists if the evidence offered "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S. Ct. 2097 (2004). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

**B.      Objections to Bosch's summary-judgment evidence**

Before we can evaluate Bosch's summary-judgment evidence, we must address Frost's contention that Bosch's evidence is inadmissible. In response to Frost's no-evidence summary-judgment motion, Bosch submitted an affidavit and numerous exhibits. Frost objected to several statements in the affidavit. It also objected to the exhibits as inadmissible hearsay and unauthenticated documents.

Although Frost raised its objections before the trial court, it never obtained a ruling. A trial court granting summary judgment without expressly ruling on objections to summary-judgment evidence does not impliedly sustain the objections. *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Frost failed to re-urge the matter to obtain a proper ruling or refusal to rule.

We must determine if this failure to obtain a ruling waived the objections. Objections to summary-judgment evidence may be either to the form or to the substance of the evidence. Objections to the substance challenge the competency of the evidence and may be asserted for the first time on appeal. Objections to the form challenge the admissibility of the evidence and must be preserved. *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Thus, by failing to obtain a ruling or a refusal to rule, Frost has waived all objections to the form, but not objections to the substance, of the affidavits and exhibits. *See*

*Seaprints, Inc. v. Cadleway Props., Inc.*, 446 S.W.3d 434, 441 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Bosch's first exhibit, which is his own affidavit, begins by affirming "all the summary judgment exhibits attached to this response and the facts mentioned in the Response to Frost's Motion for Summary Judgment are true and correct to the best of [Bosch's] knowledge." Frost objects that this statement is not based on Bosch's personal knowledge, but merely the best of his knowledge. A lack-of-personal-knowledge objection is an objection to the form and must be preserved. *Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st Dist.] 1997, no writ). By failing to obtain a ruling, Frost has waived this objection. *See Seaprints*, 446 S.W.3d at 441.

Frost further objects to Bosch's affidavit because it asks the court to consider Bosch's response as summary-judgment evidence. This is an unwaiveable objection to the substance because statements of fact in a summary-judgment motion or response, even if sworn, are not competent summary-judgment evidence. *See Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–61 (Tex. 1995); *Rizkallah*, 952 S.W.2d at 585. Thus we will not consider Bosch's response as summary-judgment evidence.

Frost also contends that the affidavit's statement "Frost committed conversion" is impermissibly conclusory. An objection that an affidavit's

10

statement is impermissibly conclusory is an objection to the substance and cannot be waived. *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Rizkallah*, 952 S.W.2d at 587. A statement in an affidavit should not be considered if it offers a conclusion without any explanation or underlying facts. *Green*, 1 S.W.3d at 130. Bosch provided no explanation or underlying factual basis for this conclusion. Thus we agree that the statement is conclusory and will not consider it in our evaluation of the summary-judgment evidence.

Frost further contends that the remainder of Bosch's evidence consists of inadmissible hearsay and unauthenticated documents. Such evidentiary objections are objections to the form and are waived if not preserved. *Id.*; *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Thus, Frost waived such evidentiary objections on appeal. *See Seaprints*, 446 S.W.3d at 441.

## C.    Bosch's summary-judgment evidence

We examine Bosch's no-evidence summary-judgment evidence, subject to the exclusions noted above, for each cause of action challenged by Frost.

### 1.    Breach of contract

Frost's summary-judgment motion challenged the following elements of Bosch's breach-of-contract claim: (1) existence of a contract, (2) performance, (3) breach, and (4) damages. In response, Bosch directs us to several promissory

11

notes, loan contracts, and line-of-credit term sheets. Setting aside the existence of a contract with Frost, Bosch fails to identify any evidence supporting the other three challenged elements.

## 2. Deceptive trade practices

Frost's summary-judgment motion asserted that there is no evidence of an unconscionable action, which is a requirement of Bosch's DTPA claim. TEX. BUS. & COM. CODE ANN. § 17.50(3) (West 2011). Frost challenges the following elements of an unconscionable action: (1) an action taken to Bosch's detriment (2) taking advantage of Bosch's lack of knowledge, ability, skill, or capacity (3) with a glaringly noticeable, flagrant, complete, and unmitigated unfairness. *See id.* § 17.45(5) (West 2011); *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (defining grossly unfair degree).

In support of his claim, Bosch points to numerous generalized marketing statements by Frost, such as: "Frost Bank goes above and beyond in reaching out to customers and responding to their needs"; "It's about genuine one-on-one relationships"; and "We'll . . . work with you to customize a strategy that fits your life." He also points to several promotional letters from Frost that use marketing terminology like "valued customer" and, in one instance, offer Bosch a free subscription to *Texas Monthly*. But Bosch does not identify any evidence that Frost took advantage of any lack of knowledge, ability, skill, or capacity or that its

actions resulted in a glaringly noticeable, flagrant, complete, and unmitigated unfairness. *See generally Chastain*, 700 S.W.2d at 583–84 (although plaintiff does not need to prove scienter, he must show that defendant objectively took advantage of plaintiff to grossly unfair degree).

### 3. Fraud

Frost's summary-judgment motion asserts that there is no evidence of any representation by Frost to Bosch that was (1) actually false, (2) made either with actual knowledge that it was false or recklessly as a positive assertion without knowledge of its truth, (3) intended to be acted upon, and (4) the proximate cause of Bosch's alleged damages.

Bosch identifies several statements made by Frost to Bosch concerning various accounts and loans that he believes are fraudulent. But Bosch adduces no evidence that the statements were false or that Frost knowingly or recklessly made any false representations.

### 4. Duty of good faith or fiduciary duty

Frost asserts that there is no evidence that it (1) owes Bosch a duty of good faith or a fiduciary duty or (2) breached either duty. Bosch claims that Frost owed him a fiduciary duty stemming from a special relationship between them. While an implied covenant of good faith and fair dealing does not arise from every contract, courts "have recognized that a duty of good faith and fair dealing may arise as a

13

result of a special relationship between the parties governed or created by a contract." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *modified*, *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990). In addition to a duty of good faith, Texas courts may also recognize a fiduciary duty in "certain formal relationships, such as an attorney-client or trustee relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (internal citations omitted). "We also recognize an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id.* (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). In a business transaction, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 288.

Bosch directs us to a business letter he wrote to a Frost official regarding loan repayment and concludes: "Frost could have prevented [Bosch's] losses and damages with a meeting and planning with Bosch." But he fails to produce any contract that expressly creates either a fiduciary duty or a duty of good faith. Bosch's summary-judgment evidence fails to demonstrate anything more than a bank–customer or lender–borrower relationship between Frost and Bosch. These relationships do not normally give rise to a formal fiduciary duty or a duty of good faith. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—

14

Houston [1st Dist.] 1996, no writ). Finally, Bosch's summary-judgment evidence cannot support an informal fiduciary duty because there is no evidence of a special relationship of trust and confidence prior to and apart from the business transactions underlying this dispute. *See Associated Indem. Corp.*, 964 S.W.2d at 288; *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Therefore, Bosch fails to adduce evidence of a duty of good faith or a fiduciary duty.

### 5. Usury

Frost challenges only one element of Bosch's usury claim: charging a higher interest rate than allowed by law. In his response to the summary-judgment motion, Bosch relied on only one piece of evidence: a single typewritten page of unknown provenance with an almost verbatim recitation of Bosch's usury allegations in his fourth amended pleadings. "Pleadings simply outline the issues; they are not evidence, even for summary judgment purposes." *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971). In his brief, Bosch also directs us to the court's final judgment—which it issued almost a year after granting summary judgment—and a page of a promissory note from 2464 to Frost for $1,900,000 with "the highest [interest] rate established by law." The note is not usurious on its face, and Bosch does not explain why it reflects a usurious rate. Therefore, Bosch adduced no summary-judgment evidence of usury.

15

We conclude that the trial court properly granted summary judgment on all causes of action asserted by Bosch. Accordingly, we overrule Bosch's second issue.

## Denial of Jury Request

In his third issue, Bosch asserts that the trial court erred by denying his request for a jury trial.

### A. Standard of review

We review the denial of a jury-trial request for abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). The trial court abuses its discretion when its "decision is arbitrary, unreasonable, and without reference to guiding principles." *Id.*

### B. Bosch's jury request

In Texas, civil lawsuits are tried without a jury unless a party requests a jury trial. TEX. R. CIV. P. 216. To successfully request a jury, a litigant must submit a written request for a jury and pay a jury fee within a reasonable time, but not less than thirty days, before trial. *Id.*

If either the request or the fee is untimely, the trial court has discretion to deny the request. *Id.*; *Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985); *Monroe v. Alts. in Motion*, 234 S.W.3d 56, 69 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The denial of an untimely jury request is not reversible error unless the

16

movant affirmatively shows that the trial court could have granted the request without (1) interference with the orderly handling of the court's docket, (2) delay of trial, or (3) injury to the opposite party. *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997); *Dawson v. Jarvis*, 627 S.W.2d 444, 446–47 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Bosch asserts that he did not waive his right to a jury trial in any contract with Frost. This case went to trial on December 4, 2013. Bosch did not pay the jury fee until November 14, 2013. Thus, assuming without deciding that Bosch did not contractually waive his jury-trial right, his jury fee was nevertheless untimely. Bosch presents no evidence to show that a belated grant of his jury-trial request would not have interfered with the court's docket, caused delay of trial, or prejudiced Frost. Because Bosch fails to meet this burden, we conclude that the trial court did not abuse its discretion.

We overrule Bosch's third issue.

## Discharge of Indebtedness to Frost

In his fourth and fifth issues, Bosch asserts that the trial court erred by denying his motion to dismiss Frost's counterclaim. Bosch asserts that the bankruptcy court had exclusive jurisdiction over all matters arising from his bankruptcy, his debt to Frost was discharged in bankruptcy, and Frost was judicially estopped from presenting the claim.

We begin by addressing Bosch's challenge to subject-matter jurisdiction. If the trial court did not have jurisdiction, neither do we. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 95 (Tex. 2009). Whether a trial court had subject-matter jurisdiction is a question of law reviewed de novo. *Miranda*, 133 S.W.3d at 226.

The trial court had jurisdiction. Frost's counterclaim was not filed until after the bankruptcy reorganization plan had been confirmed. When the reorganization plan is confirmed "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *accord Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 121 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Thus the mere historical fact of Bosch's bankruptcy did not preclude the trial court from exercising jurisdiction over a counterclaim asserted against him by Frost.

Turning to discharge and estoppel, Bosch has waived these issues. Discharge of indebtedness in bankruptcy and judicial estoppel are both affirmative defenses, and Bosch was required to plead and to prove each affirmative defense. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Bosch did not plead any affirmative defenses, and thus waived these issues. TEX. R. CIV. P. 94.

We overrule Bosch's fourth and fifth issues.

## Objection to the Business-Records Affidavit

In his sixth issue, Bosch contends that the trial court should have sustained his pre-trial and trial objections to Frost's business-records affidavit. To preserve the issue for review, Bosch must show that he timely objected and received a ruling or refusal to rule from the trial court. TEX. R. APP. P. 33.1 Bosch concedes that he did not obtain a ruling on his pre-trial objection on the issue. At trial, he objected under Rule 403 to one of the business records, but never objected to the business-records affidavit. Accordingly, he has failed to preserve the issue.

We overrule Bosch's sixth issue.

## Award of Attorney's Fees

In his seventh issue, Bosch contends that the trial court erred by awarding Frost attorney's fees. Bosch offers numerous reasons why the award was in error.

Bosch asserts that the trial court should not have admitted into evidence Frost's attorneys' time records, which were redacted for confidentiality purposes. Bosch objected but obtained neither a ruling nor a refusal to rule on his objection, and thus he failed to preserve that complaint for appeal. TEX. R. APP. P. 33.1.

In addition, Bosch asserts that there are four "errors" from the testimony of Frost's lawyer. He quotes a series of record excerpts, many of which support or are irrelevant to the fee award. He provides almost no argument and does not cite or discuss any legal authority. He does not articulate any legal basis for an appellate

challenge to the award of attorney's fees. Therefore, we conclude that he waived the issue on appeal. TEX. R. APP. P. 38.1(i); *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

We overrule Bosch's seventh issue.

## Award of Usurious Interest

In his eighth issue, Bosch contends that the trial court awarded "usurious interest" on a note that he personally guaranteed.

The trial court awarded $244,988.36 in unpaid accrued interest, which is the amount reflected in bank records admitted at trial and the testimony of a Frost executive. He contends that Frost sought only $227,069.46. According to trial evidence, the difference between the two figures reflects the proceeds from an insurance claim on the collateral securing the loan.[1] Bosch contends that both amounts are usurious, but does not explain why. He does not attempt to calculate the correct amount or identify an error in the trial court's calculation. He does not specify what the proper interest rate should be. The record does not contain the financial documents necessary to calculate the unpaid and accrued interest. Because he cites no legal authority or record evidence in support of his argument, Bosch waived the claimed error. TEX. R. APP. P. 38.1(i).

We overrule Bosch's eighth issue.

---

[1] The judgment credited Bosch for the amount of the claim. Including this credit, the actual amount awarded as interest was $226,786.60.

**Bosch's Day in Court**

In his ninth issue, Bosch asserts numerous reasons why he was "den[ied] his day in court." Bosch largely re-urges issues raised elsewhere in his brief and addressed elsewhere in this opinion. In addition, Bosch provides little more than a bare recitation of record excerpts. He provides almost no argument and does not cite or discuss any legal authority. Therefore he has waived any other points of error contained in this section of the brief. TEX. R. APP. P. 38.1(i).

We overrule Bosch's ninth issue.

**Conclusion**

We reverse the trial court's order striking the entities' claims from the petition and remand to the trial court for further proceedings on those claims. In all other aspects, we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

21