Michael Massengale, Justice
This is an appeal from a case dismissed based on a limitations defense. The appellants are the adult children of Ernal Lewis, Sr., who died in 1982. The appellants were minors at the time of their father's death. In 2014, they sued Walker Arenson, who was the independent administrator of their father's estate, seeking an accounting and alleging causes of action for fraud by nondisclosure, negligent misrepresentation, breach of fiduciary duty, professional negligence, and violation of the Deceptive Trade Practices Act. The trial court granted Arenson's motion for summary judgment *328 on the affirmative defense of limitations.
On appeal, the appellants contend that the court erred by granting summary judgment in Arenson's favor. They raise various challenges to the summary-judgment evidence, including an argument that the court should not have considered Arenson's affidavit because it contradicted his earlier deposition testimony. In asserting that genuine issues of material fact precluded summary judgment, they argue their claims did not accrue when they received their inheritance checks because Arenson breached his fiduciary duties by failing to make a full disclosure of all material facts. Thus they contend that the discovery rule and the doctrine of fraudulent concealment deferred accrual of their causes of action.
The summary-judgment evidence showed that with the exception of a petition for an accounting, the appellants' claims were first filed and served on November 29, 2014. But because they were on inquiry notice by the early 1990s, more than four years before asserting their claims against Arenson, the relevant claims were barred by limitations. Accordingly, we affirm.
Background
Ernal Lewis, Sr. died in a car accident in April 1982. At the time of his death, he was 70 years old and married to his wife, Gertrude. He also was survived by three children he had with his ex-wife, Zella Mae Brown, all of whom were still minors at the time of his death-Mary (age 13), Lenthan (age 9), and Ernal, Jr. (age 7).
Zella hired attorney Walker Arenson to probate a 1980 will. That will purportedly bequeathed all of Lewis's real property to his children in trust, and it named Zella as trustee and executor. Representing Zella in her capacity as the children's guardian ad litem, Arenson filed an application to probate the will and for issuance of letters testamentary.
Zella later renounced her right to serve as executor and trustee, and Arenson was appointed temporary administrator with the power to take possession of all of Lewis's assets, to pay probate court costs and attorney's fees, to sue and defend lawsuits, to protect the estate, and "to disburse" money from the estate to "Zella Mae Brown, as agreed upon by all of the Decedent's heirs." Arenson filed a document titled "Verified Exhibit Showing Condition of Estate," which showed that the estate consisted of real property in Lee County, Texas valued at $250,000 and a one-half community interest in real property in Travis County valued at $8,500. The court authorized Arenson to sell the Lee County property "in order to pay expenses of the administration and allowances."
Meanwhile Lewis's brother, L.V. Bradshaw, filed a will contest and argued that the 1980 will had been procured by Zella's undue influence at a time when Lewis lacked testamentary capacity. Bradshaw ultimately withdrew his challenge. The court ruled that Lewis died intestate, appointed Arenson as independent administrator, and identified Lewis's heirs as his widow and his three children. The court's order stated that "the heirship of Decedent has been fully and satisfactorily proved as well as the identity of the nature of Decedent's property as being separate or community and the interest and shares of each of the heirs therein." The order further stated that, at the request of "all distributees of the Decedent," "no other action shall be had in this Court in relation to the settlement of Decedent's Estate other than the return of an Inventory, Appraisement, and List of Claims as required by law."
*329 Due to Zella's inability to fulfill parental responsibilities, the children were placed in foster care and separated from each other for the rest of their childhood. Still, Mary and Lenthan knew that their father had left them money. Mary learned it from a counselor in a group home. In 1986, when Mary turned 18, Arenson invited her to his office and gave her a check. She testified: "He just said that this is what your father left and I got the check and that was it." She did not ask Arenson any questions. Mary estimated that the check was for $25,000, which she used for housing and living expenses.
Lenthan was injured in the accident that killed his father. He testified that his memory was "kind of vague," but he was "probably 13, 14" years old when he first learned from his foster-care providers that his father had left him some money, and they advised him to speak to Arenson when he turned 18. Lenthan did not ask how much money he had inherited. Like his sister, when he turned 18, he went to Arenson's office. Lenthan received a check for $37,000, and he did not ask Arenson any questions.
Ernal, Jr., the youngest sibling, testified that he received a check in 1993, before his eighteenth birthday. Unlike his siblings, he was surprised when his foster parents told him they had received a phone call from a lawyer about a check. Accompanied by his foster father, Ernal, Jr. visited Arenson's office. He testified: "I remember this very well. He opened the door and he just reached out and handed me a check and he didn't say two words to me. And he walked right back in his office, and that was it." Ernal, Jr. received a check for approximately $38,000. He said the check looked like a personal check, and he recalled that "Austin National Bank" was printed on it. Neither Ernal, Jr. nor his foster father asked Arenson any questions. Ernal, Jr. said he "thought maybe it came from the State or something." After he received the check, he never called Arenson.
According to Lewis's now-adult children, they learned in 2011 that their father signed a will that purported to create a trust for them. Ernal, Jr. averred:
There was more than $250,000 in my father's estate in 1983 but there is NO record of what happened to these funds. The only thing we have recently learned is that all of this $250,000 was entrusted to Walker Arenson as independent administrator of my father's estate and as the trustee of our children's trust. We have no idea where the money went over the years.
Lewis's children hired an attorney. In a letter dated July 12, 2012, the attorney sent a letter to Arenson that stated: "My clients were quite young when their father ... passed away. At the moment, I am reviewing certain matters for them." The letter requested information and files relating to Lewis's estate. Arenson did not respond to the initial request.
A month later, the lawyer sent another letter. It stated:
Over one month ago, I wrote to you concerning your prior representation of my clients-Ernal Lee Brown Jr. (a.k.a. Ernal Lee Lewis Jr.), Mary Ola Brown (a.k.a. Mary Ola Lewis and Mary Williams), Lenthan Dwayne Brown (a.k.a. Lenthan Dwayne Lewis) (collectively, "my clients"). My clients are heirs of the Estate of Ernal Lee Lewis, Sr., (the "Estate"). It appears that you have also represented the Estate and Zella May Brown, who is the mother of my clients.
I asked you to provide certain information, including your attorney files, but you have not done so, nor have you given me the courtesy of a reply.
*330 My clients have advised me that they have called you in the past few months and that you have talked to them on the phone several times and invited them to your office to locate materials. You delivered checks of a large amount to each of my clients in your office on three separate occasions. My clients believe that you were their former attorney as well as the former attorney for their mother, from whom they have heirship. Court records appear to confirm such.
In April 2013, Lewis's children filed a petition for an accounting and inventory. Arenson was deposed in July 2014, and he testified that he had disposed of all the records he had relating to Lewis's estate in 2007. This included bank statements and tax returns.[1] He was unable to say how the estate's funds or any resulting interest had been distributed. After the deposition, Arenson filed a document entitled "Inventory, Appraisement, and List of Claims." The information in this document was the same as in the 1982 "Verified Exhibit Showing Condition of Estate." The court eventually held a hearing and approved the inventory.
In November 2014, Lewis's children amended their petition to add claims for fraud by nondisclosure, negligent misrepresentation, breach of fiduciary duty, professional negligence, and violation of the Deceptive Trade Practices Act. They subsequently amended their petition again to specify actual and exemplary damages and to request certain findings of fact.
Arenson filed a motion for summary judgment. Among other grounds, he asserted the affirmative defense of limitations, arguing that the claims against him were barred because they accrued when the appellants "received their allegedly insufficient checks upon turning 18." He contended that the claims accrued between 1986 and 1993, and by 2014 the limitations periods had long since expired. His summary-judgment evidence included his affidavit, court filings, and orders in the Lewis probate matter, and excerpts from the depositions of Lewis's children.
Among other things, Lewis's children responded that the limitations period should be tolled because of Arenson's fraud and application of the discovery rule. They argued that Arenson was their fiduciary and that he fraudulently concealed material facts and intentionally destroyed records.[2] They also argued it would have been unreasonable to expect them, as foster children, to timely discover and act upon the information supporting their claims.
The trial court granted Arenson's motion for summary judgment on limitations *331 grounds, denied summary judgment on all other grounds, and severed the petition for an accounting into a separate cause number. The appellants filed a motion for new trial, which the trial court denied.
Analysis
Lewis's children asserted claims against Arenson for fraud by nondisclosure, negligent misrepresentation, breach of fiduciary duty, professional negligence, and violation of the Deceptive Trade Practices Act. The generally applicable limitations periods for these claims are two or four years.[3] For purposes of the statutes of limitations applicable to personal actions, a person is under a legal disability if the person is younger than 18 years of age.[4] If a person entitled to bring a personal action is under a legal disability when a cause of action accrues, the time of the disability is not included in the limitations period.[5]
"The primary purpose of statutes of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds."[6] A statute of limitations can terminate "stale claims,"[7] and it has the effect of precluding claimants from "sleeping on their rights."[8] "The state interest in the orderly disposition of decedents' estates ... justifies the enforcement of generally applicable limitations on the time and the manner in which claims may be asserted."[9]
On appeal, we review a trial court's summary-judgment ruling de novo.[10] We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[11]
To prevail on a traditional summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that he is entitled to judgment as a matter of law.[12] A movant seeking summary judgment on *332 the affirmative defense of limitations must "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury."[13] "If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations."[14]
Lewis's children assert that the trial court erred by granting summary judgment on limitations. They raise evidentiary objections to Arenson's summary-judgment proof. They further contend that the discovery rule should apply, and that because Arenson breached his fiduciary duty by failing to fully disclose material facts, he was not entitled to a limitations defense.
I. Challenges to movant's supporting affidavit
Lewis's children argue in their brief, as they did in the trial court, that Arenson's affidavit supporting his motion for summary judgment was "a compendium of self-serving conclusions disguised as an affidavit of fact," and that it "contained unsubstantiated opinion." As such, they argue that the affidavit was inadequate to establish the limitations defense for purposes of summary judgment. Lewis's children also complain that the affidavit conflicted with his prior deposition testimony.
Objections to a summary-judgment affidavit must be specific and non-conclusory.[15] The objections to Arenson's five-page affidavit were conclusory; they did not identify any specific paragraphs or sentences as objectionable.
The argument that Arenson's affidavit conflicts with his earlier deposition testimony suggests that the affidavit was "not credible" and the deposition should be "given greater weight." However, Lewis's children do not identify any particular statement from Arenson's affidavit that directly conflicts with his deposition testimony that he could not remember various facts relating to the claims against him. The appellants make no argument that the affidavit should have been struck or disregarded for this reason. A trial court may require an explanation when an affidavit conflicts with prior testimony and appears to be a sham to avoid summary judgment, and it may grant summary judgment despite the conflicting evidence in the absence of a sufficient explanation.[16] But the appellants have made no arguments in this appeal to explain why a movant's affidavit would be entirely inadmissible because it conflicted in some particulars with a prior deposition.
We overrule the evidentiary challenges to Arenson's summary-judgment proof.
II. Limitations defense
The Supreme Court of Texas has recognized two distinct doctrines that may delay accrual of a claim or toll limitations: the discovery rule and fraudulent *333 concealment.[17] The discovery rule is a limited exception to the usual rule that "a cause of action accrues when a wrongful act causes some legal injury."[18] The discovery rule defers accrual of a cause of action when the injury alleged is inherently undiscoverable and objectively verifiable.[19] The application of the discovery rule is determined on a categorical basis-we determine whether the claim is based on the type of injury that "generally is discoverable by the exercise of reasonable diligence,"[20] without regard to whether a particular plaintiff discovered "his or her particular injury within the applicable limitations period."[21]
"The fraudulent concealment doctrine, unlike the discovery rule, resembles equitable estoppel."[22] Because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run,"[23] a "defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues."[24]
A. Application of discovery rule
Lewis's children contend that the court improperly applied the discovery rule in their case.[25] They assert that it is unreasonable to impute to them constructive notice of the contents of the probate records because they were raised in foster homes and lacked the knowledge and skills to understand their potential claims at the time they received their distributions.
"Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances, however, even in the face of allegations of fraud."[26] Ordinarily, claims arising from probate proceedings are "barred by limitations because the claimant has constructive notice of the probate proceedings."[27]
The argument that Lewis's children's injury was undiscoverable to them because of their lack of education and support is a fact-specific argument rather than a categorical argument. The Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes,"[28]
*334 and it has repeatedly determined the applicability of the discovery rule based on a "categorical approach," rather than a fact-specific approach, to bring "predictability and consistency to the jurisprudence."[29] Thus, the applicability of the discovery rule does not turn on the fact that the appellants were raised in foster homes, or other obstacles to their acquisition of publicly available information.
"A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records."[30] A legal heir of a person who has died intestate is interested in the decedent's estate.[31] "Persons interested in an estate admitted to probate are charged with notice of the contents of the probate records."[32] "Constructive notice in law creates an irrebuttable presumption of actual notice."[33]
The summary-judgment evidence showed that on December 14, 1982, Arenson filed a verified exhibit in the probate court indicating that Lewis's estate was valued at approximately $258,500, including land in Lee County, which was later sold with court approval. Arenson was later appointed as the independent administrator of Lewis's estate, and the order appointing him identified the heirs as Lewis's children and his widow. Between 1986 and 1993, each of the children received checks upon turning eighteen, which came to a total value of approximately $100,000. Each appellant provided summary-judgment evidence that upon delivering a distribution check, Arenson did not provide any other information about the inheritance or the extent of Lewis's estate. To the extent these facts establish or suggest the possibility of an injury, a person exercising reasonable diligence could have discovered it based on known information, supplemented by the public record. Thus the injury alleged by the plaintiffs was not inherently undiscoverable, and the discovery rule does not apply.
B. Fraudulent concealment
Lewis's children also contend that the trial court erred by granting summary judgment on limitations because they raised genuine questions of material fact on their allegation of fraudulent concealment. Because the discovery rule does not apply, it was the appellants' burden to adduce summary-judgment proof raising a fact issue concerning their fraudulent-concealment affirmative defense against the application of the statutes of limitations.[34] "A party asserting fraudulent concealment must establish an underlying wrong, and that 'the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.' "[35]
"Fraudulent concealment requires either the active suppression of truth or the failure to disclose when there is a duty to speak."[36] Silence may be "enough to sustain a fraudulent concealment *335 defense only if there is a duty of disclosure."[37] "A fiduciary relationship gives rise to a duty of full disclosure of all material facts."[38] "When a defendant is under a duty to make a disclosure but conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it."[39] A person to whom a fiduciary duty is owed may be unaware of the need to inquire into the fiduciary's actions,[40] and "[f]acts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved."[41]
As the administrator of Lewis's estate, Arenson had a fiduciary duty to the appellants, who were heirs of their father and interested in his estate.[42] As such, he had a duty to make full disclosure of all material facts. Lewis's children allege that Arenson failed to fully disclose all material facts to them when they received their distributions. For his part, Arenson contends that fraudulent concealment cannot justify tolling limitations in this case because the Lewis children were on constructive notice of all filings in the probate court.
The legal effect of fraudulent concealment does not extend limitations periods indefinitely.[43] Fraudulent concealment will not bar limitations "when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence."[44] In some circumstances, it can be determined as a matter of law that reasonable diligence would have uncovered a wrong.[45] Thus, in Valdez v. Hollenbeck , the Supreme Court concluded that it did not need to reach an issue relating to "the fiduciary-duty and fraudulent-concealment overlay in the probate context," since in that case limitations had run from the time that "the heirs had sufficient information to place them on inquiry notice."[46]
So too in this case. For the same reasons we concluded the claims in this case were not inherently undiscoverable, the exercise of reasonable diligence also would have led to their discovery within the applicable limitations periods. As the Supreme Court held in Mooney v. Harlin , a person "is charged with constructive notice of the actual knowledge that could have been acquired by examining public records," and "[w]hen evidence of fraud may be disclosed by examination of public *336 records ... limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence."[47] Further, "[c]onstructive notice in law creates an irrebuttable presumption of actual notice,"[48] and "[p]ersons interested in an estate admitted to probate are charged with notice of the contents of the probate records."[49] These principles compel the conclusion that the Lewis children were charged at the time of their majority with knowledge of the facts that gave rise to their claims. Just as in the Mooney case, examination of Lewis's probate records would have disclosed information concerning the administration of the estate, including the purported will offered for probate. Combined with the appellants' own knowledge of the facts relating to their interactions with Arenson, they had sufficient information to put them on inquiry notice of the claims asserted in this lawsuit.
The summary-judgment evidence thus showed that Lewis's children were on inquiry notice of their potential claims against Arenson as of the time they reached the age of majority and received their inheritance checks. Accordingly, the trial court correctly granted summary judgment in Arenson's favor on limitations grounds with respect to the claims for breach of fiduciary duty and fraud by nondisclosure.
Conclusion
The trial court properly granted summary judgment on the basis of limitations as to all claims asserted in this litigation. We affirm the trial court's judgment.

In an affidavit submitted in support of his motion for summary judgment, Arenson averred:
In 2007 after going through a divorce I decided to stop renting a storage unit that I had rented for some time in north Austin. It contained old records that I did not believe were needed anymore, including records pertaining to Ernal's Estate. Any work for this Estate ended in 1983 or 1984, and, according to Ernal's children, the final distribution from the estate occurred at the latest in 1993. I had absolutely no reason to think that anything would ever come up again on this estate which by 2007 had ended twenty-five years earlier. I had any records pertaining to this Estate as well as many other records destroyed in 2007 when I gave up the storage unit.

The children alleged that Arenson acted as their fiduciary in multiple capacities: as a fiduciary holding funds belonging to them based on common-law agency principles; as an independent administrator of their father's estate; as a formal or informal trustee for a "Children's Trust" that was supposed to be established for them; as an informal guardian of their assets when they were minors and when they were in foster care; and as their attorney.

See Tex. Civ. Prac. & Rem. Code § 16.003(a) (two-year limitations period for torts); id. § 16.004(a)(4)-(5) (four-year statute of limitations for fraud and breach of fiduciary duty); id. § 16.051 (four-year residual statute of limitations); Tex. Bus. & Com. Code § 17.565 (two-year statute of limitations for DTPA claims); HECI Expl. Co. v. Neel , 982 S.W.2d 881, 885 (Tex. 1998) (two-year limitations period for negligent misrepresentation); Willis v. Maverick , 760 S.W.2d 642, 644 (Tex. 1988) ("A cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year limitations statute.").

See Tex. Civ. Prac. & Rem. Code § 16.001(a)(1).

See id. § 16.001(b).

Willis , 760 S.W.2d at 644.

E.g. , Valdez v. Hollenbeck , 465 S.W.3d 217, 227 (Tex. 2015).

Little v. Smith , 943 S.W.2d 414, 418 (Tex. 1997) ; see also Mooney v. Harlin , 622 S.W.2d 83, 84 (Tex. 1981) ("Statutes of limitation compel a party to assert his claim within a reasonable time and punish him for failing to do so.").

Frost Nat'l Bank v. Fernandez , 315 S.W.3d 494, 511 (Tex. 2010) (quoting Reed v. Campbell , 476 U.S. 852, 855-56, 106 S.Ct. 2234, 2237, 90 L.Ed.2d 858 (1986) ); see also Mooney , 622 S.W.2d at 84 (noting that statutes of limitations "provide stability and security to personal affairs and protect property rights").

Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009).

Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006).

Tex. R. Civ. P . 166a(c) ; Little v. Tex. Dep't of Criminal Justice , 148 S.W.3d 374, 381 (Tex. 2004).

KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp. , 988 S.W.2d 746, 748 (Tex. 1999).

Id.

See Tex. R. Civ. P . 166a(f) ; Seaprints, Inc. v. Cadleway Props., Inc. , 446 S.W.3d 434, 442 (Tex. App.-Houston [1st Dist.] 2014, no pet.).

See Lujan v. Navistar, Inc. , 555 S.W.3d 79, 90 (Tex. 2018).

See Valdez , 465 S.W.3d at 229 ; S.V. v. R.V. , 933 S.W.2d 1, 4-6 (Tex. 1996).

Via Net v. TIG Ins. Co. , 211 S.W.3d 310, 313 (Tex. 2006) (citing S.V. , 933 S.W.2d at 4 ); accord Valdez , 465 S.W.3d at 229.

Shell Oil Co. v. Ross , 356 S.W.3d 924, 929-30 (Tex. 2011).

HECI Expl. , 982 S.W.2d at 886.

Wagner & Brown, Ltd. v. Horwood , 58 S.W.3d 732, 735 (Tex. 2001) (citing S.V. , 933 S.W.2d at 7 ).

Id. at 736 (citing Comput.Assocs. Int'l, Inc. v. Altai, Inc. , 918 S.W.2d 453, 456 (Tex. 1996) ).

S.V. , 933 S.W.2d at 6.

BP Am. Prod. Co. v. Marshall , 342 S.W.3d 59, 67 (Tex. 2011).

The appellants allude to the continuing-tort doctrine and the fact that Arenson filed an inventory in 2014 in which he stated that he was the independent administrator of the estate. They do not explain how or why this would defeat Arenson's motion for summary judgment on limitations. Their argument about the continuing-tort doctrine is inadequately briefed. See Tex. R. App. P . 38.1(i) ; see also Exxon Mobil Corp. v. Rincones , 520 S.W.3d 572, 593 (Tex. 2017) (on particular facts presented, declining to apply continuing-tort doctrine and following rule that "a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy" and the "fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run").

Little , 943 S.W.2d at 420.

Id.

Via Net , 211 S.W.3d at 313.

Apex Towing Co. v. Tolin , 41 S.W.3d 118, 122 (Tex. 2001) ; see Wagner & Brown , 58 S.W.3d at 735 ; HECI Expl. , 982 S.W.2d at 886 ; S.V. , 933 S.W.2d at 6.

Mooney , 622 S.W.2d at 85.

See Tex. Est. Code § 22.018(1).

Mooney , 622 S.W.2d at 85.

Id.

See KPMG , 988 S.W.2d at 748-49.

BP Am. Prod. , 342 S.W.3d at 67 (quoting Earle v. Ratliff , 998 S.W.2d 882, 888 (Tex. 1999) ; Weaver v. Witt , 561 S.W.2d 792, 793 (Tex. 1977) (per curiam) ).

AT&T Corp. v. Rylander , 2 S.W.3d 546, 557 (Tex. App.-Austin 1999, pet. denied).

Id. ; see also Bradford v. Vento , 48 S.W.3d 749, 755 (Tex. 2001) ("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent.").

Valdez , 465 S.W.3d at 230.

Id. at 229-30 ; see also ExxonMobil Corp. v. Lazy R Ranch, LP , 511 S.W.3d 538, 544 n.21 (Tex. 2017) ("The doctrine of fraudulent concealment tolls the statute of limitations until the fraud is discovered or could have been discovered with due diligence.").

Valdez , 465 S.W.3d at 231 ; S.V. , 933 S.W.2d at 8.

Willis , 760 S.W.2d at 645.

See Huie v. DeShazo , 922 S.W.2d 920, 923 (Tex. 1996).

See Valdez , 465 S.W.3d at 230 ; Etan Indus., Inc. v. Lehmann , 359 S.W.3d 620, 623 (Tex. 2011) (per curiam).

Kerlin v. Sauceda , 263 S.W.3d 920, 925 (Tex. 2008).

E.g. , Hooks v. Samson Lone Star, Ltd. P'ship , 457 S.W.3d 52, 58 (Tex. 2015).

465 S.W.3d at 231.

622 S.W.2d at 85 (citing Sherman v. Sipper , 137 Tex. 85, 152 S.W.2d 319, 321 (1941) ).

Id. (citing Hexter v. Pratt , 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't adopted) ; Univ. State Bank v. Gifford-Hill Concrete Corp. , 431 S.W.2d 561, 570 (Tex. Civ. App.-Fort Worth 1968, writ ref'd n.r.e.) ).

Id. (citing Salas v. Mundy , 59 Tex.Civ.App. 407, 125 S.W. 633, 636 (1910, writ ref'd) ).