Opinion issued February 26, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00471-CV

———————————

**RACHEL CONOVER, INDIVIDUALLY AND AS TRUSTEE AND BENEFICIARY OF THE RACHEL ELIZABETH CONOVER TRUST CREATED BY THE LAST WILL & TESTAMENT OF WILLIAM VAN CONOVER III; KATHERINE CONOVER, INDIVIDUALLY, AND AS BENEFICIARY OF THE KATHERINE MARIE CONOVER TRUST; AND DEBORAH SHAMBAN, TRUSTEE OF THE KATHERINE MARIE CONOVER TRUST, Appellants/Cross-Appellees**

**v.**

**WARD S. CONOVER AND JAMES E. TAUSIG, INDEPENDENT CO-EXECUTORS OF THE ESTATE OF WILLIAM VAN CONOVER, II,** Appellees

*and*

**CONNIE CONOVER, Appellee/Cross-Appellant**

On Appeal from Probate Court No. 1
Harris County, Texas
Cause No. 491,483

## MEMORANDUM OPINION

This appeal arises from a summary judgment granted in favor of the co-executors of an estate ("co-executors") involving claims related to the decedent's actions when he was executor of his son's estate and trustee of testamentary trusts for the benefit of his granddaughters. The granddaughters and successor trustee of one of the trusts ("the appellants") asserted the decedent breached his fiduciary duty and committed fraud by non-disclosure. They also brought claims against the decedent's widow ("Connie") for unjust enrichment and constructive trust. The trial court granted the co-executors' traditional summary-judgment motion based on the statute of limitations and the exculpatory clause contained in his son's will. The trial court also denied the co-executors' and Connie's no-evidence summary-judgment motions.

The appellants contend (1) genuine issues of material fact remain as to whether the discovery rule and fraudulent concealment apply to defeat the co-executors' statute of limitations defense; (2) the co-executors waived their exculpatory clause defense, and genuine issues of material fact remain as to whether the decedent engaged in willful misconduct or gross negligence; and (3) genuine issues of material fact remain regarding the appellants' unjust enrichment and constructive trust claims against Connie. The co-executors respond (1) the appellants' claims are barred as a matter of law; (2) the appellants failed to rebut the

valid exculpatory clause; and (3)the appellants' claims against Connie fail because they depend on the barred claims.

Connie cross-appealed, contending that the trial court erred by denying her and the co-executors' no-evidence summary-judgment motions because the appellants presented no evidence of (1) damages; (2) benefit received by the decedent; (3) unjust enrichment; and (4) an identifiable res that can be traced back to the original property.

We affirm the trial court's judgment.

**Background**

William Van Conover, III ("Van") died in July 2001. At the time of his death, he was unmarried and had two daughters, Rachel Conover, and Katie Conover, who were ten and four, respectively. His will devised his residuary estate to his father, William Van Conover, II ("Bill") as trustee, to divide into equal shares and distribute in trust for the benefit of Rachel and Katie. His will also appointed Bill as independent executor of his estate.

By April 2002, Bill had filed Van's inventory, appraisement, and list of claims. The inventory included certain documents from the estate's federal tax return. Such documents showed, among other things, that the value of Van's estate

3

was over $4 million[1] and the Lagniappe Farms, Inc. and Lagniappe Interests, Inc. were valued at $1.

In 2002, Deborah Shamban ("Debbie"), Rachel and Katie's mother, asked for information about the trusts, but Bill refused to give her any information. Bill's ex-wife and Rachel and Katie's grandmother, Margarite Kirk, warned Debbie that Bill mismanaged his sons' trusts, but Debbie did not think Bill was mismanaging Rachels' and Katie's trusts. When Rachel was in high school, Margarite gave Rachel the same warning, but Rachel also did not believe her. Bill consistently paid for everything Rachel and Katie needed, including education and living expenses.

However, Bill did not set up Rachel's and Katie's trusts until 2010, nine years after Van's death, and he funded each trust with only $619,504. Rachel and Katie did not receive information regarding Van's estate and relied on Bill to manage their trusts. In 2014, Rachel's trust was valued at roughly $1.1 million, and Katie's trust was valued at roughly $2 million.

In 2010, Rachel emailed Debbie asking for more allowance after learning from Bill that her trust might not have enough money for her to get through college. Debbie's husband emphasized to Debbie that they needed to know how much was

---

[1]   Although the original inventory summary mistakenly listed the value of Van's stocks and bonds as $1,550,601.00, resulting in the total gross value of Van's estate being listed as $3,217.785, the attached schedules filed in support establish that the actual value of Van's stocks and bonds was $2,814,467, resulting in the total gross value of $4,485,641.

in the trust to make a thoughtful and fair economic decision regarding Rachel's request. Bill would not tell Rachel how much was in her trust and told her that she was entitled to know everything at age 35.

In 2014, Rachel signed an authorization form so that she could have the wealth management firm make on-demand fund transfers between her trust and her personal savings account. By 2016, Rachel had direct conversations with the wealth management firm managing her trust, and by May 2017, she had received a detailed portfolio report for her trust and instructed the wealth management firm to transfer money into her personal account to cover her expenses.

In 2015, Katie turned 18. Bill told Katie she had a trust with $2 million in it and gave her a credit card to use so that the trust would pay her expenses. She had ongoing conversations about her trust with Bill and his assistant, Michelle Garza, particularly when she had to pay tuition, rent, or bills related to her horses. Katie knew Van's estate was the source of her trust money but never asked which assets from Van's estate funded her trust.

When Bill died in 2021, Rachel became the successor trustee for her own trust, and Debbie became the successor trustee for Katie's trust. At that time, Rachel and Katie discovered the estate tax return showing that Van's gross estate was over $4 million when he died in 2001 and that the Lagniappe Farms, Inc. and Lagniappe Interests, Inc. were valued at $1 each.

They also discovered that Bill filed estate tax returns annually until 2015 which showed the estate was generating income, but they did not know what happened to the assets or the income generated by the assets.

Despite further investigation, they could not find records showing various proceeds from estate assets were deposited into their trusts, but they found Bill had taken out at least one express credit line loan on behalf of Van's estate in 2007.

The appellants asserted breach of fiduciary duty and fraud by non-disclosure claims against the co-executors of Bill's estate and unjust enrichment and resulting trust claims against Bill's widow, Connie. Connie moved for summary judgment based on no evidence, and the co-executors moved for no-evidence and traditional summary judgment. The trial court granted the co-executors' traditional summary judgment motion but denied the two no-evidence summary judgment motions. The appellants moved for reconsideration and/or a new trial, which the trial court denied. The trial court entered a final judgment that all parties take nothing by their claims.

## Appeal and Cross-Appeal

This appeal involves the trial court's decision to grant the co-executors' traditional motion for summary judgment, while the cross-appeal involves the trial court's denial of Connie's and the co-executors' no-evidence summary-judgment motions. If we determine the trial court properly granted the co-executors' traditional

6

motion for summary judgment, we do not need to reach the no-evidence grounds for summary judgment raised in the cross-appeal.

**Standard of Review**

"We review a trial court's order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) (cleaned up).

To prevail on a traditional motion for summary judgment, "the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* at 681 (internal quotations omitted). For a defendant, as movant, to prevail on a motion for summary judgment, he must either disprove at least one necessary element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 473 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "An issue is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Hansen*, 525 S.W.3d at 681 (internal quotations omitted). Once the movant establishes his right to judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a fact issue to defeat summary judgment. *Richardson-Eagle, Inc.*, 213 S.W3d at 473.

Because the trial court did not specify the grounds on which it granted the traditional motion for summary judgment, we must affirm if any of the grounds alleged in the motion are meritorious. *Hansen*, 525 S.W.3d at 680.

## Limitations

In their first issue, the appellants argue that the co-executors were not entitled to summary judgment on the ground of limitations because genuine issues of material fact remain regarding the discovery rule and fraudulent concealment. Viewing the evidence in the light most favorable to the appellants, we conclude that their claims are barred as a matter of law.

### I. Applicable Law

A defendant moving for summary judgment on the limitations affirmative defense has the burden to conclusively prove that defense. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). The defendant must (1) conclusively establish when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by establishing as a matter of law that "there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *Id.* "If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations." *Id.*

Each of the appellants' causes of action is subject to a limitations period of two or four years. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.003(a); 16.004(a)(5). "Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury." *Berry v. Berry,* 646 S.W.3d 516, 523 (Tex. 2022). A legal injury occurs when facts come into existence that authorize a claimant to seek a judicial remedy. *Id.* "A cause of action accrues when the injury occurs, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Id.* at 524 (internal quotations omitted). For purposes of statutes of limitations for personal actions, a person is under a legal disability if he or she is younger than 18 years of age. *Brown v. Arenson*, 571 S.W.3d 324, 331 (Tex. App.—Houston [1st Dist.] 2018, no pet.). If a person entitled to bring a cause of action is under legal disability when such cause of action accrues, "the time of the disability is not included in the limitations period." *Id.*

The discovery rule is a rare exception that is only applied in "exceptional cases." *Berry,* 646 S.W.3d at 524. Under the discovery rule, the accrual of a cause of action is deferred "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Id.* The rule should be applied narrowly and only when the injury is "inherently undiscoverable." *Id.* "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* Whether an injury

9

is inherently undiscoverable is determined on a categorical basis rather than case-specific basis; "the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). Thus, this inquiry presents a question of law. *Estate of Ewers*, 695 S.W.3d 603, 620 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (op. on reh'g).

Fraudulent concealment is an affirmative defense to the statute of limitations. *KPMG Peat Marwick*, 988 S.W.2d at 749. The party asserting fraudulent concealment has the burden to raise it in response to the summary judgment motion and to come forward with summary-judgment evidence raising a fact issue on each element of that defense. *Id.* When a defendant conceals his wrongdoing, the fraudulent concealment doctrine may toll statutes of limitations after a cause of action has accrued. *Estate of Ewers*, 695 S.W.3d at 620. The elements consist of: (1) an underlying wrong; (2) the defendant's actual knowledge of the wrong; and (3) concealment of the wrong to deceive the plaintiff. *Brown*, 571 S.W.3d at 334. When a plaintiff alleges the defendant fraudulently concealed the wrong through affirmative misrepresentations, the plaintiff must also prove that he relied on such misrepresentations, and his reliance was reasonable under the circumstances. *Estate of Ewers*, 695 S.W.3d at 621–22. "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co. v. Marshall,* 342 S.W.3d 59, 67 (Tex.

2011). Unlike the discovery rule, the fraudulent concealment doctrine necessarily turns on the particular facts of each case. *Estate of Ewers*, 695 S.W.3d at 621.

Both the discovery rule and fraudulent concealment focus on discovery of the wrong and reasonable diligence to determine when the exceptions no longer defer accrual or toll limitations, respectively. *Id.* at 622. "Unless reasonable minds cannot differ on issues like discovery of the wrong and reasonable diligence, these issues are for the factfinder to resolve." *Id.* Both exceptions evaluate reasonable diligence under an objective standard. *Id.* at 623.

Reasonable diligence requires that "owners of property interests make themselves aware of relevant information available in the public record." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011). In probate proceedings, the reasonable diligence standard is measured against the publicly available probate records. *See Brown*, 571 S.W.3d at 334–36. "Persons interested in an estate admitted to probate are charged with notice of the contents of probate records." *Id.* at 334. "Constructive notice in law creates an irrebuttable presumption of actual notice." *Id.*

## II.     Analysis

The parties do not dispute that absent the application of either the discovery rule or fraudulent concealment doctrine, the appellants' claims are barred by limitations. Rachel turned 18 years old in 2009, and Katie turned 18 years old in 2015. Four years is the longest statute of limitations applicable to their claims. Thus,

limitations period on their claims expired no later than 2019 for Katie and 2013 for Rachel absent the application of the discovery rule or fraudulent concealment doctrine.

**A. Application of the Discovery Rule**

The appellants contend the trial court erred by refusing to apply the discovery rule in their case. Texas courts generally refuse to apply the discovery rule to claims arising out of probate proceedings even when fraud is alleged because, ordinarily, claimants are interested persons who have constructive notice of the contents of the probate record. *Brown*, 571 S.W.3d at 333–34.

Rachel and Katie assert that they are not interested persons in their father's estate. They argue Bill's actions were inherently undiscoverable and the appellants did not have actual or constructive knowledge of them until 2021, when Rachel became the successor trustee of her own trust and Debbie became the successor trustee of Katie's trust. The co-executors respond that Rachel and Katie had constructive notice of the contents of the probate records because they were "persons interested" in their father's estate, and as such, the irrebuttable presumption of actual notice applies.

Rachel and Katie did not take directly under Van's will. Instead, the will instructed Bill to form trusts for their benefit. The Estates Code, though, does not focus on whether the parties have an interest in the decedent's will. It asks whether

12

they have an interest in the decedent's *estate*. An "interested person" or "person interested" includes "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. EST. CODE § 22.018(1). This Court has clarified that a "person interested in the estate" is "one who has legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired, benefitted, or in some manner materially affected" by the proceeding. *Evans v. Allen,* 358 S.W.3d 358, 364 (Tex. App.— Houston [1st Dist.] 2011, no pet.).

Rachel and Katie are "persons interested" in their father's estate. *See id.* (holding a beneficiary of the first will but not the second will was a "person interested" in the estate); *Fields v. Fields*, No. 01-21-00138-CV, 2022 WL 2836808, at *8 (Tex. App.—Houston [1st Dist.] July 21, 2022, pet. denied) (mem. op.) (holding daughter who was expressly disinherited by the will was an "interested person" in her father's estate). They have a pecuniary interest that was materially affected by the probate of their father's will.

Further, Rachel and Katie have beneficial interests that flow directly from the probated will, and the will's validity, interpretation, and administration directly affect the creation and terms of the testamentary trusts. As beneficiaries of testamentary trusts, they are the owners of the property placed in the trust, and as such, they have "property rights in or claims against" the estate. *See Eagle Oil &*

*Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021) (acknowledging that holders of equitable title to trust property are real owners of such property).

The appellants' own petition is also consistent with Rachel and Katie's status as interested persons in Van's estate. They pleaded that Bill should have accounted to them for his handling of Van's estate assets before Rachel's and Katie's trusts were established and funded. They also pleaded that Bill had a duty to keep them informed of all material facts regarding Van's estate.

We therefore conclude that Rachel and Katie, as persons interested in Van's estate, are "charged with constructive notice of the contents of the public probate records." *Evans*, 358 S.W.3d at 365. They are also charged with constructive notice of the actual knowledge that could have been acquired by examining them. *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981). An examination of the probate records would have disclosed the trust's distribution schedule as described in Van's will; the gross value of Van's estate; the valuation of Lagniappe Farms and Lagniappe Interests at $1 each; the value of Van's life insurance; and the value of Van's real estate. Accordingly, the appellants were charged with notice that: (1) the value of Van's estate was more than $4 million, including stocks and bonds worth $2.8 million;[2] (2) Lagniappe Farms and Lagniappe Interests were valued at $1 each; (3)

---

[2]    We noted earlier that the inventory summary has an error in the stocks and bonds amount, which reduces the estate total on the first page. Because the attached schedules include the correct amounts, this error does not affect our analysis.

Van's life insurance was $1 million; (4) Van's real estate was valued at $399,000; and (5) certain amounts from the trusts would be distributed to them at certain ages, all by the time they reached age 35. Their constructive notice of the probate records creates an irrebuttable presumption they had actual notice of them when they reached eighteen. *See Brown*, 571 S.W.3d at 334.

The appellants contend that even if they were charged with constructive notice, they had no reason to look into the probate records based on their positive relationship with Bill and his misleading them into believing they were not entitled to information regarding their trusts. In support of their argument, they cite a non-probate case regarding right of first refusal where the plaintiff had no reason to monitor property records. *See Archer v. Tregellas*, 566 S.W.3d 281, 291–92 (Tex. 2018). *Archer* is inapplicable because, in probate cases, persons interested in an estate are charged with notice of the contents of probate records. *Mooney*, 622 S.W.2d at 85. Because constructive notice creates an irrebuttable presumption of actual notice, such presumption cannot be contradicted by evidence. *See Brown*, 571 S.W.3d at 334.

Once charged with such notice, the appellants had knowledge of facts that would cause a reasonably prudent person to make inquiry of Bill's actions as executor and trustee. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 58–59 (Tex. 2015) (holding that if plaintiffs had exercised reasonable diligence,

readily accessible and publicly available information would have revealed injury, and thus, they did not exercise reasonable diligence as a matter of law). The appellants did not need to know they had a cause of action; they only needed to know the facts giving rise to the cause of action. *Fields*, 2022 WL 2836808, at *9.

Although the standard is objective, the appellants' pleading confirms that the very information that caused them to discover their injury was the same information that was originally filed in the probate records. Their live petition explains that they learned from the 2002 estate tax return that Van's estate had a gross value of $4.6 million, including stocks and bonds worth $2.8 million, and Lagniappe Farms and Lagniappe Interests were "curiously" valued at only $1 each. These $1 valuations prompted the appellants to inquire. The summary-judgment evidence also demonstrates that the 2002 estate tax return is what prompted the appellants to become concerned that the balance of the estate proceeds was never accounted for and never made it to their trusts.

The appellants rely heavily on their status as trust beneficiaries owed fiduciary duties by Bill as trustee. They are correct that the discovery rule can be invoked when "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *Berry*, 646 S.W.3d at 526. But those owed a fiduciary duty are not entirely absolved of the standard obligation to

16

use reasonable diligence to discover an injury. *Id.* "[A] person owed a fiduciary duty has some responsibility to ascertain when an injury occurs." *Id.*

The question here is whether the appellants were unable to inquire into Bill's actions or unaware of the need to do so. Rachel and Katie presented evidence Bill did not inform them of their trust information. The summary judgment evidence showed red flags that would have alerted a reasonable person of the need to inquire about Bill's actions.

Rachel had conversations, as early as high school, which would cause a reasonable person to investigate whether Bill was mismanaging her trust. Bill refused to give her information on her trust, and Margarite told Rachel that Bill mismanaged his sons' trusts, resulting in a lawsuit and her becoming trustee of their trusts. Rachel was concerned she would exhaust her trust in 2010.

Debbie also had conversations that would call a reasonable person to investigate whether Bill was mismanaging her daughters' trusts. Bill refused to give her any information as early as 2002; Margarite gave Debbie the same warning as Rachel in 2006; and in 2010, Debbie was aware that Rachel was concerned she would exhaust her trust, and Debbie's husband emphasized the importance of finding out how much was in the trust.

Between 2010 and 2015, Katie knew she would inherit money from Van that he had left her when he died. Beginning in 2015, Katie had conversations with Bill

regarding her trust and knew that the trust grew to $2 million. She was also in communication with Michelle Garza, Bill's assistant, and knew that Jay Brown was the person looking after her trust. She understood the trust was from Van's estate and had the trust pay for various expenses, including education, rent, and her horses. Despite the trust paying for all of her living expenses, she did not investigate the probate records or ask for more information about her trust or how it was managed.

That Bill, as fiduciary, purportedly misled the appellants by not giving them certain information regarding their trusts and Van's estate does not absolve them of their obligation to exercise reasonable diligence by looking at the probate records and inquiring further. To the extent these facts establish a possible injury, a person exercising reasonable diligence could have discovered it based on known information, supplemented by the probate records.

Taking the evidence in the light most favorable to the nonmovants, and indulging every inference in their favor, the information furnished from the probate records combined with the appellants' own knowledge of the facts from their interactions is sufficient as a matter of law to require the appellants to begin an inquiry, and the record shows that a diligent inquiry would have led to the discovery of their alleged injury. Thus, the appellants' alleged injury was not inherently undiscoverable, and the discovery rule does not apply.

**B. Application of fraudulent concealment**

The appellants also contend the trial court erred because genuine issues of fact remain regarding the application of the fraudulent concealment doctrine. The appellants complain that a fact issue remains regarding what the appellants knew or should have known because of Bill's fiduciary duty to Rachel and Katie and his concealment of his actions. They further assert that they presented more than a scintilla of evidence proving the elements of fraudulent concealment.

Assuming without deciding they met their burden to raise an issue of fact regarding the elements of fraudulent concealment, fraudulent concealment does not toll the running of limitations indefinitely. *Marcus & Millichap Real Estate Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC,* 659 S.W.3d 456, 464 (Tex. 2023). The tolling effect of fraudulent concealment ceases when one learns of facts, conditions, or circumstances that would prompt a reasonably prudent person to make an inquiry that, if pursued, would lead to the discovery of the concealed cause of action. *Id.*

For the same reasons we concluded the claims in this case were not inherently undiscoverable, we conclude that the exercise of reasonable diligence would have led the appellants to discover any alleged concealed cause of action within the applicable limitations periods. The irrebuttable presumption of actual notice of the probate records compels the conclusion that the appellants were charged at the time

of their majority (in 2009 and 2015) with knowledge of the facts giving rise to their claims. Combined with their own knowledge of the facts relating to their trusts and interactions with Bill and Margarite, the appellants had sufficient information to put them on inquiry notice of their causes of action by 2015 at the latest.

Thus, viewed in the light most favorable to the appellants, and indulging every inference in their favor, appellees conclusively established that the discovery rule did not delay the accrual of their claims and that any tolling under the fraudulent concealment doctrine would have ceased by 2015. Thus, the four-year statute of limitations expired in 2019. Because the appellants did not file their claims until 2021, their claims were barred. For these reasons, the trial court properly granted summary judgment against the appellants on the statute of limitations.

We overrule the appellants' first issue. Because our holding on the statute of limitations is dispositive, we need not address the appellants' remaining issues or the cross-appeal in this case.

## Conclusion

We hold that the trial court did not err in granting the co-executors' summary judgment. We affirm the trial court's judgment.


Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.